Good morning, Your Honors. My name is Lori Tyker and I'm representing the Petitioner Appellant Thomas Brand. I'll attempt to reserve two minutes for rebuttal. The issue certified by this Court is whether or not trial counsel was ineffective by failing to move to suppress the eyewitness identification in this matter. Mr. Brand can show that there was a reasonable probability that the result of trial would have been different had counsel moved to suppress the identifications. In terms of a back story regarding this case and what led to Mr. Brand being charged with all of these robberies, Mr. Brand, what did go to trial, and there was five separate counts of robberies, which Your Honors are all well aware of, there are five different incidents, and the way that Mr. Brand was brought to the Reno Police Department's attention was actually an incident that was caught on videotape that's very different from any of these robberies, and something that the prosecution in the state throughout the trial made great issue with, that he had this motive, he had this M.O., this is, it had to have been him because every robbery was the same. Well, the robbery in which he was apprehended and was on videotape, or the crime that he was on videotape, allegedly having committed, and subsequently pledged to, was trying to pass a bad casino chip in South Lake Tahoe. It ensued in a fray, the police found him, they chased him. Ms. Teicher, this is a fascinating account of facts that I didn't find in the record of the state habeas proceeding. I've got a procedural problem with this case, and that is the failure of your client to basically establish all of this at the hearing before the state district court judge, when he had the opportunity to do that. Can you help me figure out how we're going to overcome that little hurdle? That hurdle can be overcome by, and granted, that state post-conviction proceeding was odd to say the least, in terms of how it all went down. Mr. Brand did have some difficulties with his lawyer, he moved to withdraw, that happened. We're familiar with it, so. What happened was, basically, no hearing, in terms of any evidence being presented. What was presented was Mr. Brand trying to get more time in order to be able to call witnesses. The trial counsel didn't agree with his forthrightness or truthfulness in terms of that. Well, we've got a pretty express finding by the state trial court judge that, in essence, Mr. Brand was gaming the system, do we not? Do we have to give some credit to that factual finding as to what was going on at the time he was supposed to be presenting evidence in support of his state habeas claim? I think you do have to give some credence to that, in that that was the state district court's factual finding, but all that discussion is really begging the question, because here we don't really need collateral fact-finding in terms of what this court can do. This court, it doesn't matter whether or not the facts are presumed correct. The ineffective assistance of counsel is what's before this court, and the bottom line was whether or not trial counsel was ineffective for not moving to exclude them. And so, based upon evaluating the facts and record at trial. But we don't, in essence, you're asking us to order the federal district court to conduct an evidentiary hearing after he had an opportunity to lay his evidence at the state hearing, federal habeas corpus hearing, but failed to do so for the reasons articulated by the state district court judge. And my question is, under AEDPA, how can we do that? How can we give him another bite at the apple when he had the chance to do it at the state court and defaulted in doing that? Isn't that kind of the end of federal habeas review? I don't believe so. And I believe that this court can take a look at it and look at the facts and look at what went down in trial and in terms of counsel's motion, lack of motion. But doesn't the statute say that we have to basically, before we can order an evidentiary hearing, we have to determine that the defendant did not have an adequate opportunity to present his proof to the state court and that notwithstanding his due diligence, he was not able to present that evidence before the state court, and therefore we can order an evidentiary hearing on federal habeas review. And so we're really struggling with whether or not the evidence of his behavior before the state district court judge is evidence of due diligence so that we can excuse the flimsy record in support of his habeas petition and consider all the facts you want us to consider. And I think that there are ample facts in terms of his due diligence. I think what you have, if you, and I know that you all have, taken a look at the record in its entirety and obviously there were some personality issues that went, were happening between Mr. Brand, his counsel, his post-conviction counsel, as well as the judge. And just looking at his history with the judge, I think it's easy to say that the judge wasn't exactly happy with him. He sentenced him to 135 years and said, I hope you never see the light of day. That sort of summed up his personal feelings towards this defendant. These were pretty dangerous robberies. He capped off a round in one of the... He capped off one round into a showcase. He only shot a display case, so that should only be worth 20 as opposed to 25 years. Well, I believe he received 30 on that one. The other ones, there's a question as to whether or not he actually was the person who committed that offense, but... Judge Acuda has a question for you. Turning just to the facts that we do have, which is essentially the transcript of the preliminary hearing, and the judge says we get the person from custody or the bailiff says he's in custody, and then there's an invocation of the exclusionary rule. Since we're looking at ineffective assistance of counsel, we would have to say that based on those facts, the defense counsel was ineffective in not moving to suppress the subsequent identifications. But the defense counsel assumed to be knowledgeable of the Ninth Circuit precedents, such as U.S. v. Bagley, and others which seem to allow that identification procedures in even more suggestive frameworks, which seem to say that there was no Strickland error there. Why should we find that the type of proceeding that happened in the preliminary hearing was more suggestive than types of identification that we found perfectly acceptable? I think that if you take a look at Foster or U.S. v. Bagley, both of those cases which were cited in terms of the COA that was granted by this court, you can compare them to the situation that you did have here. And in analyzing every one of the witnesses and looking at the Niels v. Biggers factors, I argue that had counsel made that motion to exclude, it could have been successful. And therefore, she was ineffective for not doing so. If you take a look at How do we know what happened in the factual record anyway? I'm sorry? How do we know, based on the record we have, what happened at the preliminary hearing? All we have is the judge saying, let's bring in the prisoner. It doesn't say when he was brought in. It doesn't say how. It doesn't say that anybody saw him or saw the face. We don't know. There's nothing in the record that even indicates that they saw him. Which begs the question of the need for an evidentiary hearing. No, no, no. But you're talking, I'm focusing on that part of it, because you've got to say I mean, there's just nothing in the record. Well, in terms of looking at precisely how it happened, and reading the transcript, and knowing procedure in Washoe County, in terms of how preliminary hearings are conducted, you can take a look at what the judge has said and counsel's response. The judge asks where Mr. Brand is. He's in custody. He's in custody. And he said, all right. I'll have a bailiff bring him in. There's nothing else. There's a group of witnesses that are there that are all being sworn in at the same time. Mr. Brand's brought in wearing his green jumpsuit. There's nobody else there. That's the problem we're having. That Mr. Brand is brought in wearing his green jumpsuit doesn't show in the transcript. We don't know when Mr. Brand arrived before the witnesses were excluded. I think that you can, it's implied in the record, and it's certainly implied in terms of what the green jumpsuit was green and that he arrived shortly thereafter. I mean, you're really asking us to speculate here as to what must have happened based on habitual proceedings in Washoe County. In Washoe County. Which, again, begs the need for a hearing. A hearing that the district court judge didn't allow him to have. They didn't even allow him to testify and say what happened during that. Much less call his counsel or bailiff. He asked them, do you want to, do you have anything more to present? He could have said, I'd like to testify, and he didn't. Well, I think that based upon the histriatrics of what was going on in the courtroom, and his frustration with the fact that he didn't have any of his papers, including his post-conviction petition to even know what he alleged. He wasn't in the mood to testify? Well, I don't believe that he was in a position to be able to even adequately testify or run a post-conviction hearing in that he didn't have any of his papers. But also, I didn't appear to be tendering any witnesses on this particular issue. He talked about witnesses on other issues, but I didn't see that in the record, maybe you can correct me, that he was going to tender any evidence on this issue. I don't know that there was any opportunity for him to say that. To specify, well, you know, I have all of these issues. Because he certainly had a huge number of issues. He was basically shot down from the beginning in terms of... Well, let's assume it happened the way he says it happened. Getting back to Judge Acuta's question, why would that be, under the Strickland standard, a failure of counsel to make the motion? Because what we have at best is he comes in, motion to exclude, they're out of there. All we have is a brief view. We have a brief view, but... According to him. I mean, it's not anywhere else in the record that anybody saw him. Even if he came in, and it's likely he came in before they were excluded, I think that's probably a reasonable inference from the record. But we don't know how he came in, we don't know if they saw him, all those things. Assuming that he came in in his jumpsuit, in his leg chains, which is standard procedure basically in any courtroom, not just Washoe County, assuming that they saw him, there was yet another opportunity for them to see him and for the identifications to be solidified. If you take a look at every one of the witnesses, what you have is a written statement with the majority of them, and it's laid out in the briefing, in terms of what each specific of the five witnesses testified to, but you have a situation where they either, the witness couldn't do a composite sketch, they described in a written statement someone looking completely different from him, in that the majority of them, all of them, say that he's 5'8 and 150 pounds. Mr. Brown's 200 pounds and 6'1. That's a huge difference in terms of the actual description. Then you have a situation where some of the photo lineups, again, pursuant to Foster or Begley, when you're looking at the sequence, what you have is this progression where every single time law enforcement's involved, they have this huge unsolved base of robberies that happened in Washoe. They basically charge him with every single one of them, despite the fact that you even have one officer who said, you know, this guy's not the guy, he's a completely different physical description, but what happens is every time these people are given a lineup, they're given another lineup with a newer picture of him, can you ID him now? Then they're shown him at the preliminary hearing, and then all of a sudden at trial, everyone's absolutely unequivocal, he's the guy, despite the fact that it started here. We don't even have the photo montages that were shown so that we can say, you're right, Ms. Teicher, that that's a terrible photo montage. They put Mr. Brand in with people of a completely different race. There's nothing in the record on this. There is one, there's actually I believe two photo composites in the record, and I can find the record sites, I can try to find the record sites within the government. We don't have a situation where we have people of different races, but we certainly have a situation where there are different individuals. And you have a situation where you have different individuals, and then you have with the second lineup, oh, well, nobody could ID him from that older picture, let's bring a brand new one. So now they've got yet another opportunity, and it's very similar to Foster versus California, where in effect the police are repeatedly saying to the witness, this is the guy, this is the guy, this is the guy. You see him in the green jumpsuit sitting next to his lawyer, here he is. It doesn't matter that he's six inches different. So is your argument really that before a witness can make an in-court identification, they should go through a full physical lineup and pick him out of the lineup before they can make an in-court identification? No, my argument is that based upon the reliability factors under Neal versus Biggers, and the standards and the test as to whether or not an identification procedure is impermissibly suggestive, you need to look at those factors. And when you apply each of the factors to each of the witnesses in this case, it's not reliable. You've consumed your time. Thank you. And that's it. That was a good argument. Thank you. Thank you very much for your argument. May it please the Court. My name is Keith Monroe. I am appearing today on behalf of the named respondents. The Nevada Supreme Court's denial of the ineffective assistance of counsel claim that is before this Court was an objectively reasonable application of Federal law. This decision is fully consistent with Strickland versus Washington. The presumption of trial counsel's effectiveness has not been overcome in this case. Moreover, appellant has not established a showing of prejudice with respect to the claim before this Court. Therefore, Federal habeas corpus relief is not proper. We've never heard from trial counsel about her representation, but I think the record reveals that trial counsel's performance in this case was very good. Her challenge to identification was strong, so strong it is reasonable to infer that if she thought a motion to suppress had any merit, she would have filed one. If we heard from her, we might have thought she had a tactical reason for not filing one as well. I think the Federal court below got it right when it held that counsel thoroughly cross-examined the witnesses with respect to the identification issue and that trial counsel could have reasonably concluded that an objection to the identification process would be futile. Appellant has not even established that the totality of the circumstances regarding the identification procedure in this case was impermissibly suggestive. If you look at page 6 of appellant's opening brief, appellant states, Rand, dressed in a jumpsuit, was paraded into the courtroom prior to his preliminary hearing by an armed uniformed bailiff and viewed by all prosecution witnesses while they were placed under oath. Only then was the exclusionary rule involved. There's no citation to an excerpt of record for those facts. Moreover, if you look at excerpt of the record 54, it isn't clear that it was an identification procedure where plaintiff was paraded into the courtroom, so he could be viewed by all witnesses. There's no evidence that there was a plan to use this as an identification procedure. The only witness in this record who says that's true is the appellant. The appellant was found to have his testimony to be false in state district court. He didn't really testify on this issue, though, before the district judge, or the state district judge. I mean, he didn't raise this at all. So we can't really say that the district court disbelieved his statements or his testimony on it. I think it's a reasonable inference from the record that these witnesses saw him, because he says, all right, he needs to be in, and then let's proceed and call your witness, motion to exclude. I mean, in terms of... I would respectfully disagree with you, Your Honor, but I think... Had he come in at a different time, don't you think the court reporter would have noted that? I don't think the court reporter really noted when he came in. No, I mean, that would be... That's what I'm saying. He says, go get the defendant, and then there's, all right, now we're ready to proceed. It says, I guess we're all ready, Mr. Ray, and Mr. Ray says, yes, Your Honor. And we don't know that the witnesses weren't brought in at that time, because the court then says, all right, I see we have a number of witnesses. And we're... I think it's a fair inference from the record. I mean, whether it gets Mr. Brand anywhere is a different matter, but... All right. I'll move on there, Your Honor, because I think if you look at the record in this case, I think you're going to see a well-prepared trial counsel. She filed a petition for writ of habeas corpus, a discovery motion, moved to sever the offenses, moved to exclude seized evidence and statements, moved to exclude testimony of inmates, moved to restrict expert testimony, moved to prevent the defendant from being exposed in shackles, moved to limit argument and comments, moved to exclude prior bad acts, moved to mention gang membership. Trial counsel reviewed the evidence that was going to come into the trial in this case. She clearly thought long and hard about the evidence she wished to exclude. And she did her best to do so. I think it's reasonable to infer that if she thought this had any merit, she would have filed a motion. Where is the state court finding on that specific point? I'm sorry, Your Honor? Where is the state court finding on this specific allegation of ineffective assistance of counsel? The court found that appellant was not credible. Right. He had presented a petition for writ of habeas corpus, and I believe an affidavit in support of it. He had no evidence to present and did not... I probably wasn't clear on my question. Isn't it true that there is no specific reasoned decision of the state court on this specific issue? There is a generic finding that the writ's denied, and then there's an affirmation. But unless I've missed something, the district, neither the district court nor the appellate court addressed the specific issue. Is that true? No, I think they both did. I think, you know, the claims that the district court found that he couldn't, hadn't established a claim of ineffective assistance of counsel, that encompassed all of his claims. Right. And that the Supreme Court... They do discuss other claims, at least on the appellate level, but I, unless I've missed it, and it may or may not be significant, but I don't see any reasoned decision as to this particular point. There's a generic denial of all of his claims by the trial court, or the district court, I should say. And then there is an affirmation that discusses a number of the other claims in the appellate court. But I don't see any reasoned decision on this particular point, unless you can, maybe you can point out... Well, let's, I'll read to you what the district court found. The state district court held there were, there are cases where a reviewing court's deference to the trial fact based on the demeanor of the witnesses seems excessive. The instant case, however, is different. Brand was almost comical in the manner in which he is, in which his demeanor contradicted his spoken words, because Brand failed to persuade the court that a continuance was appropriate, or that he had any valid claims for relief. The petition for rid of Capus Corpus is denied. I know, that's what I just said. I said it was a generic denial. There's no, there's no discussion. Well, I don't want to quibble with you. The record is the record. The question I have, I was just trying to establish a predicate to this issue. Does that make a difference or not, in your view, of whether we defer to the finding, if there's no reasoned decision on this particular point? Well, I think there was a reasoned decision. Well, where is it, besides what you've said? Well, and, okay, and then the Nevada Supreme Court held that the district court found that Brand did not testify to any complete ground for relief, and that his testimony at the evidence you're hearing was false and lacked credibility. Brand cannot demonstrate that the district court erred as a matter of law. I mean, he didn't present a claim. So it's tough to have a reasoned decision when he really hasn't presented a claim that has. Is the decision that there's a failure to establish a prima facie case for habeas relief, isn't that the finding? Well, yeah, because I don't. I understand that's a decision on the merits, and I'm not quibbling with you on that. I'm just saying there's no reasoned decision on this particular point, right? Well, I think sometimes, you know, the courts look at these cases, and when there's a bunch of stuff thrown up against the wall, they reject them summarily because they have no merit. Thank you. I think this is where I was starting. That was just a simple point I was going to ask you as a predicate to my next question, which is, does it make a difference, which is what I think I would like you to discuss instead of quarreling with me about what the record says. Wouldn't we both know what it says? Thank you. I apologize. Yeah, it makes no difference in this case. A robbery was committed at South Lake Tahoe. The robber used a blue Mercury Capri to depart from the scene. The robber was forced to abandon that car. When the police seized the car, they recovered evidence linking the appellant to the car and to the prior robberies for which he was convicted. A Social Security card and a food stamp of Thomas Brand were found in the car. I think my question was a bit different. My question was analytically, does it make any difference in the argument of epideference that we don't have a reasoned decision on this particular point, although we have a decision on the merits? Tell me how you analyze that as a matter of law through the AEDPA lens. Okay. I think it could if you made that finding. I don't believe it was. I think the evidence in this case was so strong that the finding of the Nevada Supreme Court was warranted. There was a mountain of evidence against this guy in this case. I'm not sure you're answering Judge Thomas' question, and now you've got me thoroughly confused. If the determination is that the habeas petitioner has simply failed to make out sufficient facts to establish a claim for relief, isn't that a determination? It's essentially a finding that you have no claim here because there's no evidence to support your ineffective assistance claim. Yes, Your Honor. And so would it then be accurate, as Judge Thomas has been asking you, to conclude that there is no reasoned decision in that situation on the IAC claim? Or is a determination that the evidence is insufficient to show an IAC violation a determination, a reasoned decision to which we must give epideference? Yes, I think the latter. I think the determination made in this case because there were no facts is a reasoned decision that is entitled to epideference. Well, I'm not arguing that it wasn't a decision on the merits, but there's no analysis, you agree, in any of them? I agree with that. Okay. But now Judge Reed gave some analysis. Judge Reed gave some analysis. And so as we're sitting as an appellate court, and actually this is just a simple question that we've taken a long time to get to, how do we view that? Do we say it's entitled to somewhat less deference? Do we have to examine the record on our own, as Judge Reed did, to determine whether or not the state court decision on the merits was unreasonable? I think you're welcome to examine the record on your own. I don't think you should under AEDPA. I think if you did examine the record on your own, you'd find that it's reasonable to conclude that trial counsel made a reasoned decision not to file a motion to suppress. I think even if a motion to suppress had been filed, it would have been denied. To the extent it may have been granted, there would be no prejudice in this case, because the evidence against the appellate in this case was so strong. Do we have anything in this record that indicates whether or not, what the reasons were for not filing the motion? No. So when you say that the counsel made a reasoned decision not to file it, what are you basing that on in this record? The case law of Strickland v. Washington. That appellant has to establish that there was some reason for not filing a motion in this case. I mean, there's no showing that appellant didn't look at that and say, I don't think it has any merit. That's why I went through the litany of motions that had been filed in this case. The trial counsel clearly went through and looked at the evidence and tried to determine what should and shouldn't be in the evidence and moved accordingly. So I think it's fair to presume from those facts the trial counsel reasonably could have inferred that there's no motion. Also, based on what you had to say about the records bare in the preliminary hearing about what actually happened, you might be able to make some inferences, but I don't think inferences are enough to grant Federal habeas relief in this case. I think the evidence is strong. I think also you have to remember, they're only challenging the in-court identifications. One month prior, there were identifications in this case by the witnesses. Look what happened prior to the preliminary hearing. Judy McAlexander, prior to the preliminary hearing on October 24th, she viewed a photograph lineup and identified a photograph of Brand stating as a, quote, definite possible that she was 60 to 70 percent sure of it. Anna Marie Sanchez, one month before the preliminary hearing, she viewed a photographic lineup and identified a photograph of Brand stating she was 88 percent sure of the identification. Maria Rodriguez, one month prior to the preliminary hearing, she viewed a photograph and identified Brand, a photograph of Brand and immediately stated that's him. Leslie McIntosh, prior to the preliminary hearing, which was held on November 30th, she viewed a photographic lineup and identified Brand stating 100 percent sure. I mean, the evidence against this gentleman, his own brother testified that he overheard him admitting that he had committed robberies. The gun in this case was found, that was found at his house was found to have fired one of the bullets in this case. He was seen with a gun robbing a casino or, excuse me, pulling a gun on a casino worker over a chip. The evidence is strong. When they found the car, they found clothing that was similar, sunglasses that were similar. Okay, counsel, we've allowed you about the same amount of overage as your opponent, so I think it's probably time to call a halt. Thank you very much. Thank you both for your arguments. The case is thoroughly submitted.
judges: Thomas, Tallman, Ikuta